IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JACOB BARRETT,

                Plaintiff,

                              Case No. 6:11-cv-06358-HZ

                              OPINION & ORDER

    v.

MAX WILLIAMS, et al.,

                Defendants.


Jacob Barrett
# 72237
North 3A-Q-107
Penitentiary of New Mexico
PO Box 1059

        Pro se Plaintiff

Shannon M. Vincent
OREGON DEPARTMENT OF JUSTICE
Trial Division, CLS
1162 Court Street, NE
Salem, OR 97301-0346

        Attorney for Defendants


1 - OPINION & ORDER

HERNANDEZ, District Judge:

Jacob Barrett is an inmate of the Oregon Department of Corrections ("ODOC") and is currently in the custody of the New Mexico Corrections Department.  While in custody at the New Mexico Corrections Department, plaintiff sent an envelope to his cousin, an inmate at the Oregon State Penitentiary ("OSP").  On the outside of the envelope was a picture that plaintiff had drawn.  Because of the picture, the letter was returned to plaintiff.

Plaintiff alleges that (1) Max Williams, the former Director of ODOC; (2) Jeff Premo, the Superintendent at OSP; (3) Michelle Whitney Dodson, the Supervising Executive Assistant to Premo; and (4) "Jane Doe", a mailroom administrator at OSP violated his First Amendment free speech rights and his Fourteenth Amendment due process rights.   Plaintiff also alleges that defendants rejected his mailing in retaliation for lawsuits he has pending against the New Mexico Corrections Department.

Defendants filed a motion for summary judgment and motion for stay of discovery. Plaintiff, however, failed to file any response to defendants' motions–even after being granted three extensions of time.  For the reasons that follow, defendants' motion for summary judgment (doc. #48) is GRANTED, and defendants' motion for stay of discovery (doc. #55) is DENIED as moot.

## STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. E.g.,

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. Id. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" Id. at 324 (quotation omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment ." Id. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I. First Amendment Free Speech Rights

Prisoners enjoy a "First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). A prisoner's First Amendment rights, however, are "subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." Walker v. Sumner, 917 F.2d 382, 385 (9th Cir. 1990) (citations

omitted). "Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." Turner v. Safley, 482 U.S. 78, 85 (1987) (citation omitted).

To determine whether a correctional institution's regulation that "impinges on inmates' constitutional rights" is valid, the court must determine whether that regulation "is reasonably related to legitimate penological interests." Id. at 89. Legitimate penological interests include "security, order, and rehabilitation." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overruled on other grounds by Thornburgh, 490 U.S. at 413-14). To "guide[] courts in determining whether a challenged regulation passes constitutional muster", the Ninth Circuit applies the four-pronged test set forth in Turner. Frost v. Symington, 197 F.3d 348, 354 (9th Cir. 1999). Under this test, courts must determine:

> (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001) (citing Turner, 482 U.S. at 89-90).

**A. The First Turner Factor**

The first Turner factor has two sub factors. First, there must be "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." Id., 482 U.S. at 90 (citation and quotation marks omitted). A regulation cannot be sustained where the "logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational". Id. at 90-91 (citation omitted). Second, the "governmental objective must be . . . legitimate and neutral". Id. The correctional institution

may demonstrate a rational relationship by showing "an intuitive, common[-]sense connection between the state's policy and its objectives." <u>Frost</u>, 197 F.3d at 356.

Defendants maintain that they satisfy the first <u>Turner</u> factor. Defendants contend that the ODOC mail rules prohibit the placement of any drawings on the outside of envelopes, citing Oregon Administrative Rule ("OAR") 291-131-0025(1). OAR 291-131-0025(1) provides that all "[i]ncoming mail shall require the sender's name and return address on the front of the envelope and shall be addressed to the inmate using only his/her committed name and SID number." Defendants assert that pursuant to OAR 291-131-0025(1), only names, applicable state identification ("SID") numbers, and addresses of senders and intended recipients may be placed on the outside of envelopes.

Plaintiff concedes that he "drew a picture" on the envelope he sent to his cousin and concedes that his letter was rejected pursuant to OAR 291-131-0025 because of the picture he had drawn. Second Am. Compl., ¶¶ VI(1)-(2), (6). Plaintiff, however, alleges that the drawing constitutes "art", and therefore the rejection of his letter violated his First Amendment right to free speech. <u>Id.</u> ¶¶ VI(1)-(2), VII(1)-(2). Plaintiff further alleges that defendants' "blanket ban" on "envelope art" is not rationally related to a  legitimate penological objective, that defendants' rejection of his letter was an "unreasonable application of the ODOC mail prohibition rules" not "rationally related to any legitimate security concerns", and that the ODOC rules under which his letter was rejected is "overbroad". <u>Id.</u> ¶¶ VII(A)(1)-(5). I disagree with plaintiff's allegations.

### 1. Rational Connection

Defendants establish an intuitive, common-sense connection between ODOC's mail regulations and the government's objectives of efficiently processing all incoming mail and maintaining a safe and secure environment within OSP. With regard to efficiency, defendants

present evidence showing that OSP processes "as much as 5,000 pieces of mail daily" and that allowing mailroom staff to reject mail not satisfying the "technical requirements" of ODOC's mail rules increases efficiency and saves money. See Declaration of Randy Geer ("Geer Decl."), ¶¶ 8, 9 12-15. They also present evidence showing that allowing OSP mail staff to return mail violating "technical portion[s]" of the ODOC mail rules saves time and money because it permits mail staff to return mail "without opening [mail] and without cost" to ODOC. Id., ¶ 8.

With respect to security, defendants present evidence showing that restricting what may be placed on the outside of mailings helps to maintain a safe and secure environment. Defendants present evidence showing that all mail received may pose some threat of "criminal activity or discussion of past criminal acts" or may "illuminate[] the workings of criminal networks." Id. ¶ 12. They contend that even a "drawing as innocuous as a fish or a tree on the outside of the envelope could alert [an] . . . inmate recipient to something special in the content of the letter" or "could be used to trigger another to act on same pre-arranged instruction." Id. ¶ 14.

Based on the uncontroverted evidence before me, I conclude that ODOC's mail regulations are rationally connected with legitimate government interests–namely, maintaining the safety and security of OSP's inmates and staff and promoting the efficient use of OSP's limited resources. See Thornburgh, 490 U.S. at 415 ("protecting prison security . . . is central to all other corrections goals") (citation and quotation marks omitted); Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 861 (5th Cir. 2004) ("staff and space limitations, as well as financial burdens, are valid penological interests") (citation omitted).

6 - OPINION & ORDER

## 2. Neutrality

The record before me also establishes that the mail regulations and the actions taken by defendants operated in a neutral fashion without regard to the content of plaintiff's drawing. Defendants proffer declarations by Geer, the Chief of Inmate Services at ODOC, and Dodson which state that plaintiff's letter was rejected because a drawing had been placed on the envelope, not because of the contents of the drawing.  See Geer Decl., ¶¶ 1, 13; Dodson Decl., ¶ 10.  The ODOC mail regulations themselves meet the neutrality criterion in Turner because they prohibit the placement of all drawings on the outside of envelopes, regardless of the contents of the drawings.

In sum, the ODOC mail regulations to which plaintiff objects are rationally related to legitimate and neutral governmental objectives.  Accordingly, I conclude that the first Turner factor weighs in favor of defendants.

## B. The Second Turner Factor

The second Turner factor examines "whether there are alternative means of exercising the right that remain open to prison inmates."  Id., 482 U.S. at 89-90.  The record here does not establish that plaintiff or any other inmate at OSP are foreclosed from exercising their free speech rights.  To the contrary, the record demonstrates that inmates at OSP retain the right to engage in free expression so long as they do not make such expressions on the outside of envelopes.  Indeed, plaintiff does not argue, and nothing in the record shows, that plaintiff was or remains precluded from sending the same drawing he placed on the outside of the envelope within the contents of a mailing.  In light of the above, I conclude that the second Turner factor weighs in defendants' favor.

**C. The Third <u>Turner</u> Factor**

The third <u>Turner</u> factor considers the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." <u>Id.</u> at 90. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." <u>Id.</u> (citation omitted). Here, the undisputed facts demonstrate that accommodating plaintiff's right to include drawings on the outside of mailings would have a significant adverse impact on the prison as a whole because as noted above, it would adversely affect the efficiency in which OSP processes mail and the safety and security of OSP. Geer Decl., ¶¶ 8-9, 12, 14. Accordingly, I find that the third <u>Turner</u> factor weighs in favor of defendants.

**D. The Fourth <u>Turner</u> Factor**

The fourth and final <u>Turner</u> factor considers the absence and existence of alternatives. <u>See id.</u>, 482 U.S. at 91. The "absence of ready alternatives is evidence of the reasonableness of a prison regulation" whereas the "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." <u>Id.</u> (citation and quotation marks omitted). If a "claimant can point to an alternative that fully accommodates the prisoner's rights at <u>de minimis</u> cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." <u>Id.</u> The Ninth Circuit, however, has made clear that "[t]his is not a least restrictive alternative test: prison officials do not have to set up and then shoot down every conceivable alternative method of

8 - OPINION & ORDER

accommodating the claimant's constitutional complaint." Id. at 91-92 (citation and quotation marks omitted).

The record before me is devoid of any obvious or easy alternative to the ODOC mail regulations. Notably, Plaintiff does not point to a single alternative that would fully accommodate his rights at de minimis cost to the government's valid penological interests, but rather simply seeks the elimination of the ODOC regulations that restrict drawings on envelopes in their entirety. See Second Am. Compl., ¶ VIII(B)(1)-(2). Because the ODOC mail regulations at issue here do not amount to an "exaggerated response" and because no obvious, easy alternative is readily available, I conclude that the fourth Turner factor weighs in favor of defendants.

In sum, the ODOC mail regulations which plaintiff challenges do not violate his First Amendment rights. Defendants' motion for summary judgment as to plaintiff's first claim for relief is therefore granted.

## II. Fourteenth Amendment Due Process Rights

Plaintiff alleges that Premo and Dodson violated his due process rights when they failed to provide him with a "reasonable and fair opportunity to object to [his mail] violation." Id. ¶ (7)(B)(1)-(3), (5). Plaintiff further alleges that Dodson violated his due process rights by "refus[ing] to review [his] objections" and by refusing to "reasonably or fairly consider [his] appeal". Id. ¶ (7)(B)(1)-(4).

It is well settled that "withhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards." Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002) (citation omitted). Constitutional due process requires that an inmate whose mail is rejected receive notice of the rejections and that any complaint be referred to a prison official other than the

person who originally disapproved the correspondence.  See Procunier, 416 U.S. at 417-19

(overruled on other grounds by Thornburgh, 490 U.S. at 413-14); see also Krug v. Lutz, 329 F.3d

692, 697-98 (9th Cir. 2003) (withholding delivery of inmate mail must be accompanied by the

"notice to the prisoner" and "the right to appeal the exclusion of incoming publications to a

prison official other than the one who made the initial exclusion decision").

    The undisputed evidence here demonstrates that plaintiff was provided the requisite due

process notice and right to appeal.  Specifically, the record shows that plaintiff received notice

by OSP that his mailing had been rejected because it contained a drawing on the outside.  Second

Am. Compl., ¶ VI(3); Dodson Decl., ¶ 4; Id., Attach. 2, p. 1.  The record further shows that

plaintiff appealed the rejection of his letter to Premo, and that Premo responded by informing

him that his mailing violated OAR 291-131-0025(1).  Second Am. Compl., ¶¶ V, VI(5)-(6);

Dodson Decl., ¶¶ 6-7; Id., Attach. 2, pp. 1-3.  The evidence also shows that plaintiff requested an

administrative review of Premo's decision, but was informed by Dodson that his request for

review had been denied.  Second Am. Compl., ¶ VI(7); Dodson Decl., ¶ 8-10; Id., Attach. 2, pp.

4, 6.  Although plaintiff disagrees with the rejection of his letter and the denial of his grievances,

it is apparent that plaintiff was provided the minimal procedural safeguards.  Accordingly,

defendants' motion for summary judgment as to plaintiff's due process claim is granted.

**III. Retaliation**

    Lastly, plaintiff alleges that the rejection of his letter was in retaliation "for having

pending civil actions against the [New Mexico Corrections Department]".  Second Am. Compl.,

¶ VII(H)(2).  "A prisoner suing prison officials under section 1983 for retaliation must allege that

he was retaliated against for exercising his constitutional rights and that the retaliatory action

does not advance legitimate penological goals, such as preserving institutional order and

discipline." <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (citing <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985)). "Of fundamental import to prisoners are their First Amendment right[s] to file prison grievances and to pursue civil rights litigation in the courts." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir.2005) (citations and quotation marks omitted). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Id.</u> at 567-568 (citations omitted).

Plaintiff makes no argument and presents no evidence supporting his retaliation claim. As discussed above, the record shows that defendants' act of rejecting plaintiff's letter advances legitimate penological goals. In addition, there is no showing in the record of a connection between the rejection of plaintiff's letter and the alleged lawsuits he had against the New Mexico Corrections Department. In fact, plaintiff presents no evidence showing that he had any pending lawsuit against the New Mexico Corrections Department. Even if plaintiff were able to show that he had a pending lawsuit against the New Mexico Corrections Department, his claim would still fail because he presents no facts showing that defendants knew or had reason to know of any of his lawsuits. Plaintiff's bare allegations by themselves are simply insufficient to create a triable issue of fact as to his retaliation claim. Defendants' motion for summary judgment as to plaintiff's retaliation claim is therefore granted.[1]

---

[1] Having concluded that all of plaintiff's claims against defendants must be dismissed, I decline to address whether defendants are entitled to qualified immunity.

11 - OPINION & ORDER

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (doc. #48) is

GRANTED, and defendants' motion for stay of discovery (doc. #55) is DENIED as moot.

IT IS SO ORDERED.

Dated this _____ day of _____, 2013.

MARCO A. HERNANDEZ
United States District Judge