IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACOB BARRETT,

                Plaintiff,

                                 Case No. 6:11-cv-06358

                                 OPINION & ORDER

    v.

MAX WILLIAMS, et al.,

                Defendants.

Jacob Barrett
# 72237
North 3A-Q-107
Penitentiary of New Mexico
PO Box 1059

        Pro se Plaintiff

Shannon M. Vincent
OREGON DEPARTMENT OF JUSTICE
Trial Division, CLS
1162 Court Street, NE
Salem, OR 97301-0346

        Attorney for Defendants

1 - OPINION & ORDER

HERNANDEZ, District Judge:

This action arises out of a letter Jacob Barrett sent in January 2011 to his cousin, an inmate at the Oregon State Penitentiary ("OSP"), when Plaintiff was in custody at the New Mexico Corrections Department ("NMCD").[1]  Plaintiff's letter was rejected and returned because of a picture he had drawn on the outside of the envelope.  Plaintiff alleges that (1) Max Williams, the former Director of the Oregon Department of Corrections ("ODOC"); (2) Jeff Premo, the Superintendent at OSP; (3) Michelle Whitney Dodson, the Supervising Executive Assistant to Premo; and (4) "Jane Doe", a mailroom administrator at OSP violated Plaintiff's First Amendment free speech rights and his Fourteenth Amendment due process rights.  Plaintiff also alleges that Defendants rejected his letter in retaliation for filing actions against ODOC and NMCD.

Now before me are Defendants' motion for summary judgment (dkt. #48), Defendants' motion for stay of discovery (dkt. #55), Plaintiff's Motion to Dismiss Defendant Williams and Substitute Defendant Colette Peters (dkt. #90), Plaintiff's Motion for Settlement Hearing (dkt. #91), and Plaintiff's Motion for Supplamental [sic] Complaint Pursuant to Rule 15(d) (dkt. #92). For the reasons that follow, Defendants' motion for summary judgment (dkt. #48) is GRANTED in part and DENIED in part, Defendants' motion for stay of discovery (dkt. #55) is DENIED, Plaintiff's Motion to Dismiss Defendant Williams and Substitute Defendant Colette Peters (dkt. #90) is GRANTED, Plaintiff's Motion for Settlement Hearing (dkt. #91) is DENIED, and Plaintiff's Motion for Supplemental Complaint Pursuant to Rule 15(d) (dkt. #92) is DENIED.

/ / /

---

[1] At the time that this action arose, Plaintiff was in the custody of NMCD.  Plaintiff was subsequently transferred to the Florida Department of Corrections ("FDOC"), where he is currently in custody.

## BACKGROUND

Plaintiff filed this action on November 10, 2011, alleging twelve "counts" based on the rejection of his January 2011 letter. On February 27, 2012, Plaintiff filed an amended complaint without seeking leave of court. On May 9, 2012, Plaintiff filed a motion for leave to file a Second Amended Complaint, which I granted. The Second Amended Complaint–the operative complaint–alleges that Defendants violated Plaintiff's First Amendment free speech rights, his Fourteenth Amendment due process rights, and unlawfully retaliated against him for lawsuits filed against ODOC and NMCD.

Defendants subsequently filed a motion for summary judgment and a motion for stay of discovery. Because Plaintiff failed to file any response to Defendants' motions–even after I granted him three extensions of time, I granted Defendants' motion for summary judgment, denied Defendants' motion for stay of discovery as moot, and entered a judgment dismissing this case. Plaintiff subsequently filed a Motion to Reopen Case, Reconsideration and Extension of Time. After carefully considering Plaintiff's motion, I found Plaintiff was entitled to relief under Rule 60(b)(1). Accordingly, Defendants' motion for summary judgment (dkt. #48) and motion for stay of discovery (dkt. #55) were reopened. Plaintiff then filed a motion to dismiss, motion for settlement hearing, and motion to supplement his complaint. I held oral argument on October 31, 2013, where the parties addressed the following two issues: (1) whether ODOC's mail rules allow incoming postcards; and (2) how ODOC processes incoming mail.

/ / /

**DISCUSSION**

**I. Motion for Settlement Hearing**

I turn first to Plaintiff's motion for settlement hearing.  Defendants are not interested in settlement negotiations at this time, and I find no rule requiring me to hold a settlement hearing as requested by Plaintiff.  Although Rule 16(c)(2)(I) permits me to "consider and take appropriate action on . . . settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule[,]" Local Rule 16-4(b) precludes the application of this rule to "[p]risoner [s]uits".  Because Plaintiff is an inmate currently in the custody of the FDOC, this action is exempt from Rule 16(c)(2)(I).

I decline to order a settlement hearing at this time–especially where Defendants have expressed that they are unwilling to engage in settlement negotiations at this point.  Plaintiff's motion is denied.

**II. Motion For Supplemental Complaint**

Plaintiff seeks to file a supplemental complaint pursuant to Rule 15(d).  Plaintiff states that his supplemental complaint seeks to "add facts which have arisen since this action was filed, substitute[] defendant Williams for defendant Peters and add[] additional defendants as a result of the new facts."  Plaintiff also files the supplemental complaint to "moot" Defendants' motion for summary judgment, to "moot[]" Defendants "[q]ualified [i]mmunity defense", and to "address[] any deficiencies raised in defendants [sic] summary [judgment] motion . . . ."  Mot. for Supplemental Compl., p. 1.

Defendants contend that Plaintiff's motion must be denied because they would be unduly prejudiced if Plaintiff's motion were granted, Plaintiff unduly delayed in seeking to supplement his complaint, Plaintiff's motion is brought in bad faith, and Plaintiff's proposed amendment

would be futile.[2]  Plaintiff does not respond to Defendants' arguments.  For the reasons that

follow, I conclude that Plaintiff is not entitled to supplement his complaint pursuant to Rule

15(d).

      Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just

terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or

event that happened after the date of the pleading to be supplemented."  "Rule 15(d) is intended

to give district courts broad discretion in allowing supplemental pleadings."  Keith v. Volpe, 858

F.2d 467, 473 (9th Cir. 1988).  "Rule 15(d) permits the filing of a supplemental pleading which

introduces a cause of action not alleged in the original complaint and not in existence when the

original complaint was filed."  Cabrera v. City of Huntington Park, 159 F.3d 374, 382 (9th

Cir.1998) (internal quotation marks and citation omitted).  "The purpose of Rule 15(d) is to

promote as complete an adjudication of the dispute between the parties as possible by allowing

the addition of claims which arise after the initial pleadings are filed."  William Inglis & Sons

Baking Co. v. ITT Cont'l Baking Co., Inc., 668 F.2d 1014, 1057 (9th Cir. 1982) (citations

omitted).  The factors relevant to a Rule 15(a) motion to amend complaint are considered when

addressing a motion to amend under Rule 15(d).  E.g., Al Haramain Islamic Found., Inc., 2012

---

[2] Defendants construe Plaintiff's motion as a motion to amend under Rule 15(a), not a motion to
supplement the pleadings under Rule 15(d).  This is inconsequential to my analysis because the
"legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as
the standard for granting or denying a motion under Rule 15(a)."  Athena Feminine Tech., Inc. v.
Wilkes, 2013 WL 450147, No. C 10-4868 SBA, at *2 (N.D. Cal. 2013) (citation omitted); see
also Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury, 2012 WL 6203136, Civil
No. 3:07-CV-01155-KI, at *8 (D. Or. 2012) ("[F]actors relevant to a Rule 15(a) motion to amend
complaint have been used in this context [of a Rule 15(d) motion].  Those factors include: (1)
bad faith; (2) undue delay; (3) prejudice to the opponent; and (4) futility of the amendment.")
(Citations omitted); Morrow v. City of San Diego, 2012 WL 2675454, No. 11-cv-01497-IEG
(KSC), at *1 (S.D. Cal. 2012) ("Because the same standard governs consideration of motions to
amend or to supplement, it is unnecessary here to distinguish when Plaintiffs seek to amend or to
supplement.") (Citations omitted).

WL 6203136, Civil No. 3:07-CV-01155-KI, at *8 (D. Or. 2012).  "Those factors include: (1) bad faith; (2) undue delay; (3) prejudice to the opponent; and (4) futility of the amendment."  Id.

Plaintiff's Third Amended Complaint adds three new claims: (1) that ODOC's ban on envelope art violated Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"); (2) Plaintiff's transfer to FDOC violated his rights under RLUIPA; and (3) ODOC's ban on envelope art violated his right to free speech under the Oregon Constitution.  Plaintiff's proposed complaint also seeks new declaratory and injunctive relief, including that he be returned to ODOC.

**A. Undue Delay**

Defendants argue that Plaintiff unduly delayed in adding his claims alleging violations of RLUIPA and the Oregon Constitution.  I agree with Defendants and conclude that Plaintiff's delay counsels against allowing Plaintiff to supplement his pleadings at this late stage of the proceeding.

Plaintiff's new RLUIPA and Oregon Constitution claims arise out of the same facts alleged in his initial complaint and constitute causes of action in existence when Plaintiff filed his original complaint–not facts or causes of action occurring after Plaintiff filed his original complaint.  Indeed, Plaintiff's initial complaint specifically alleged violations under "Article 1, Section 8 of the Oregon Constitution", but he expressly struck them from his Second Amended Complaint.  Compl., p. 12; Second Am. Compl., pp. 2, 5-8.  Plaintiff provides no argument as to why he is entitled to supplement his complaint with these new claims and proffers no reason for the delay in seeking to supplement his complaint with claims he knew or should have known existed at the time he filed his complaint.  Accordingly, I find that this factor weighs against allowing Plaintiff to supplement his complaint with new claims at this stage.  See Fed. R. Civ. P

6 - OPINION & ORDER

15(d) (Rule 15(d) permits "supplemental pleadings setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented").

### B. Prejudice

Courts may consider the prejudice to Defendants when deciding whether to grant a Rule 15(d) motion.  See Volpe, 858 F.2d at 476.  Currently before me is Defendants' fully briefed motion for summary judgment, which seeks summary judgment on all of Plaintiff's claims. Allowing Plaintiff to supplement the operative complaint with new claims based on new legal theories would likely require additional discovery and additional extensions of time.  In addition, the circumstances here weigh in favor of denying Plaintiff leave to supplement his complaint with new claims because the crux of Plaintiff's proposed Third Amended Complaint is to respond to Defendants' motion for summary judgment, not merely to supplement it with new facts as required under Rule 15(d).  As stated above, Plaintiff concedes that he filed his Third Amended Complaint to "address[] any deficiencies raised in defendants [sic] summary motion" and to "moot[]" Defendants' "[q]ualified [i]mmunity defense".  Mot. For Supplemental Compl., p. 1.  I find no authority permitting the filing of a supplemental complaint for such purposes. This factor weighs against allowing Plaintiff to supplement his complaint with new claims.

### C. Futility

The goal of the rule governing supplemental pleadings is to promote judicial efficiency. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir. 1997) (citation omitted).  A proposed amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) (citation omitted).

/ / /

### 1. Plaintiff's New Third Claim for Relief

Plaintiff's new third claim for relief alleges that he "practice[s] the religion of Druidism," which allegedly "asks [followers] . . . to open [themselves] to the inspiration and beauty of Nature and Art, through its celebration of creativity." Third Am. Compl., p. 9. Plaintiff's third claim for relief also alleges that Defendants' "blanket ban on art on envelopes violates [his] religious exercise rights in violation of [RLUIPA] . . . ." Id., p. 20. Plaintiff's proposed claim does not warrant supplementing his complaint at this late stage with this new claim.

As discussed above, Plaintiff unduly delayed in bringing his new third claim almost two years after filing his initial complaint. In addition, this claim arises out of the same facts alleged at the time Plaintiff filed his initial complaint, not facts arising after he filed his initial complaint as required under Rule 15(d). See Neely, 130 F.3d at 402 (Rule 15(d) cannot be used to introduce a "separate, distinct and new cause of action" or where "the supplemental pleading could be the subject of a separate action") (internal citations and quotations omitted). Even if Plaintiff's RLUIPA claim were not futile, the balancing of factors weigh against allowing Plaintiff to supplement his complaint to add this belated claim.

### 2. Plaintiff's New Fourth Claim for Relief

The fourth claim in Plaintiff's Third Amended Complaint alleges that his "transfer to . . . [FDOC] . . . [was] in retaliation for this civil suit" and therefore violates his rights under RLUIPA. Third Am. Compl., p. 20. Plaintiff's claim is futile and thus weighs against allowing Plaintiff to supplement his complaint.

#### a. Exhaustion

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see, e.g., Porter v. Nussle, 534 U.S. 516, 524 (2002) ("state prisoners must exhaust administrative processes prior to instituting a § 1983 suit").  There must be "proper exhaustion" of available administrative remedies, meaning the inmate must "us[e] all steps the agency holds out . . . ."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (internal quotation marks and citation omitted).  Administrative remedies must be exhausted prior to filing suit and may not be exhausted during the pendency of the suit.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); see also Vaden v. Summerhill, 449 F.3d 1047, 1150-51 (9th Cir. 2006).

Here, Plaintiff's Third Amended Complaint does not allege that Plaintiff exhausted his RLUIPA claim.  Indeed, Plaintiff makes no argument and presents no evidence to the contrary.  Because Plaintiff has not exhausted this claim as required under the PLRA, it is futile and weighs against allowing Plaintiff to supplement his complaint.

### b. Section 1983

In an action brought under 42 U.S.C. § 1983, as here, "[l]iability . . . arises only upon a showing of personal participation by the defendant. . . . A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under section 1983."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  Here, Plaintiff presents no evidence showing personal participation by any of the Defendants with regard to his retaliation claims.  Accordingly, Plaintiff's retaliation claims in his Third Amended Complaint are futile.

In sum, Plaintiff fails to establish that he should be granted leave to supplement his Second Amended Complaint under Rule 15(d). Plaintiff's motion to supplement his complaint is therefore denied.

## III. Motion for Stay of Discovery

Defendants move for a stay of discovery pursuant to Rule 26(b)(1) pending my resolution as to whether they are entitled to qualified immunity. Defendants assert that their motion for stay of discovery should be granted because the issue of qualified immunity is "purely legal and based on undisputed facts". Mot. for Stay of Discovery, p. 2. Defendants' motion is denied.

Rule 26(b)(1) provides that

[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Rule 26(b)(2)(C) provides that

[o]n motion . . . , the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Here, Defendants do not argue, let alone show, that all of the discovery is unreasonably cumulative or duplicative or can be obtained from a source satisfying the requirements of Rule

26(b)(2)(C)(i).  Defendants also do not show that Plaintiff has had ample opportunity to obtain

the information as required under 26(b)(2)(C)(ii).  Finally, Defendants do not show that the

burden or expense of discovery outweighs its likely benefit pursuant to 26(b)(2)(C)(iii).  Finally,

as discussed in detail below, Defendants are not entitled to qualified immunity on all of

Plaintiff's claims.  Defendants' motion for stay of discovery is denied.

## IV. Motion for Summary Judgment

### A. Standard

Summary judgment is proper if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact.  E.g.,

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party need only demonstrate

that there is an absence of evidence to support the non-moving party's case.  Id. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to

"set out 'specific facts showing a genuine issue for trial.'"  Id. at 324 (quotation omitted).  To

carry this burden, the non-moving party must "do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-moving

party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light

most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at

255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment ." Id.  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

### B. Qualified Immunity

Defendants assert they are entitled to qualified immunity because they did not violate any of Plaintiff's constitutional rights, they rejected Plaintiff's letter in a routine application of the mail rules, and it would not have been clear to a reasonable official that doing so would be illegal.  I agree with Defendants in part: Defendants are only entitled to qualified immunity against Plaintiff's claim for damages, not Plaintiff's claims for equitable relief.

Qualified immunity is not available as a defense in § 1983 actions "against individuals where injunctive relief is sought instead of or in addition to damages."  Henry A. v. Willden, 678 F.3d 991, 999 (9th Cir. 2012) (internal quotation marks and citation omitted); see also Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012) ("[C]laims for injunctive and declaratory relief are unaffected by qualified immunity.") (Citation omitted).  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (internal quotation marks and citation omitted).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Willden, 678 F.3d at 999-1000 (internal quotation marks and citation omitted).  "This is not to say that an official action is protected by qualified immunity unless the

very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations omitted).

The evidence before me does not show that Plaintiff's rights were "clearly established" at the time of the challenged conduct such that every reasonable official would have understood what he was doing violated Plaintiff's rights. The evidence shows that Defendants were simply following an administrative rule that they believed, in the interest of security and efficiency, required them to reject envelopes with drawings on them. Plaintiff presents no evidence showing otherwise.[3] I also find no judicial determination at the time that Plaintiff's January 2011 letter was rejected specifically holding that rejecting envelopes with pictures drawn on them pursuant to OAR 291-131-0025 is unconstitutional or otherwise establishing that Defendants' actions were improper. The record does not establish that it would be clear to a reasonable officer that his conduct was unlawful when confronted with the situation faced by Defendants.

Based on the above, I conclude that Defendants are entitled to qualified immunity insofar as Plaintiff seeks money damages. See Hydrick, 669 F.3d at 942 (holding defendants were entitled to qualified immunity with respect to plaintiffs' claims for money damages, but not plaintiffs' claims for declaratory and injunctive relief).

///

---

[3] Plaintiff repeatedly relies on the allegations in his complaint to support his opposition to Defendants' motion for summary judgment. Plaintiff's reliance on the allegations in his complaint is misplaced because as the nonmoving party, Plaintiff must present evidence sufficient to demonstrate a genuine issue for trial or to support his opposition. See Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial") (internal quotation marks and citations omitted).

13 - OPINION & ORDER

### C. Claims Against Williams

Defendants seek to dismiss Plaintiff's claims against Williams, the former Director of ODOC, because he fails to allege any personal participation by Williams.  I conclude that Plaintiff presents no triable issue of fact supporting his claims against Williams.

A supervisor may be liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation".  Starr v. Baca, 652 F.3d 1202, 1206-07 (9th Cir. 2011) (citation and internal quotation marks omitted).  Here, Plaintiff's Second Amended Complaint does not specifically allege, and the record is devoid of any evidence specifically showing, any personal participation by Williams or causal connection between Williams' conduct and Plaintiff's alleged constitutional violations.  Defendants' motion for summary judgment as to Plaintiff's claims against Williams is granted.[4]

### D. First Amendment Free Speech Rights

Prisoners enjoy a "First Amendment right to send and receive mail."  Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citation omitted).  A prisoner's First Amendment rights, however, are "subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security."  Walker v. Sumner, 917 F.2d 382, 385 (9th Cir. 1990) (citations omitted).  "Where a state penal system is involved,

---

[4] To the extent Plaintiff seeks to substitute Peters with Williams, the current Director of ODOC, pursuant to his motion to substitute (dkt. # 90), Plaintiff's claims against Peters would fail for the same reason his claims against Williams fails.  Specifically, Plaintiff proffers no evidence showing any personal participation by Peters or any causal connection between Peters' conduct and Plaintiff's alleged constitutional violations.  However, as discussed below, Plaintiff's free speech claim survives summary judgment.  Plaintiff is therefore allowed to substitute Peters for the specific purpose of allowing Peters to implement the injunctive relief sought by Plaintiff should it be necessary.

federal courts have . . . additional reason to accord deference to the appropriate prison

authorities." Turner v. Safley, 482 U.S. 78, 85 (1987) (citation omitted).

To determine whether a correctional institution's regulation that "impinges on inmates'

constitutional rights" is valid, the court must determine whether that regulation "is reasonably

related to legitimate penological interests." Id. at 89.  Legitimate penological interests include

"security, order, and rehabilitation." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overruled

on other grounds by Thornburgh, 490 U.S. at 413-14).  To "guide[] courts in determining

whether a challenged regulation passes constitutional muster", the Ninth Circuit applies the four-

pronged test set forth in Turner.  Frost v. Symington, 197 F.3d 348, 354 (9th Cir. 1999).  Under

this test, courts must determine:

> (1) whether the regulation is rationally related to a legitimate and neutral
> governmental objective; (2) whether there are alternative avenues that remain
> open to the inmates to exercise the right; (3) the impact that accommodating the
> asserted right will have on other guards and prisoners, and on the allocation of
> prison resources; and (4) whether the existence of easy and obvious alternatives
> indicates that the regulation is an exaggerated response by prison officials.

Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001) (citing Turner, 482 U.S. at 89-

90).

### 1. The First Turner Factor

Under the first Turner factor, there must be "a valid, rational connection between the

prison regulation and the legitimate governmental interest put forward to justify it." Turner, 482

U.S. at 90 (citation and quotation marks omitted).  A court must "determine whether the

governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the

policy is rationally related to that objective." Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir.

1999) (citation and internal quotation marks omitted).

/ / /

15 - OPINION & ORDER

### a. Legitimate Penological Objective

Defendants proffer evidence showing that they have a legitimate penological objective of promoting security and efficiency at ODOC.  With regard to efficiency, Defendants present the declaration of the Chief of Inmate Services at ODOC, Randy Geer, in which he states that ODOC processes "as much as 5,000 pieces of mail daily" and that allowing mailroom staff to reject mail not satisfying the "technical requirements" of ODOC's mail rules increases efficiency and saves money.  See Geer Decl., ¶¶ 8, 9 12-15.  Defendants also present Geer's statements that allowing ODOC mail staff to return mail violating "technical portion[s]" of the ODOC mail rules saves time and money because it permits mail staff to return mail "without opening [mail] and without cost" to ODOC.  Id., ¶ 8.  With respect to security, Defendants proffer Geer's statements that all mail received may pose some threat of "criminal activity or discussion of past criminal acts" or may "illuminate[] the workings of criminal networks."  Id. ¶ 12.  Geer also states that even a "drawing as innocuous as a fish or a tree on the outside of the envelope could alert [an] . . . inmate recipient to something special in the content of the letter" or "could be used to trigger another to act on same pre-arranged instruction."  Id. ¶ 14.  Based on the evidence above, I conclude that Defendants show a legitimate objective of promoting security and efficiency.  See Thornburgh v. Abbott, 490 U.S. 401, 415 (1989) ("protecting prison security . . . is central to all other corrections goals") (citation and internal quotation marks omitted); Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 861 (5th Cir. 2004) ("staff and space limitations, as well as financial burdens, are valid penological interests") (citation omitted).

### b. Neutral Regulation

Whether a regulation is neutral depends on whether it operates "without regard to the content of the expression."  Turner, 482 U.S. at 90.  Here, the evidence shows that Plaintiff's

January 2011 mailing was rejected pursuant to OAR 291-131-0025.  See Barrett Aff., Attach. 3,

p. 1.  OAR 291-131-0025(1) requires all "[i]ncoming mail [to include] . . . the sender's name and

return address on the front of the envelope and . . . be addressed to the inmate using only his/her

committed name and SID number."  None of the evidence before me demonstrates that

Defendants applied OAR 291-131-0025(1) inconsistently or that they rejected Plaintiff's January

2011 mailing because of the content drawn on the envelope.  Indeed, Plaintiff concedes that

Defendants' policy of rejecting all envelopes with art on them amounts to a "total ban on art on

envelopes".  Resp., p. 6.  Based on the above, I conclude that Defendants' policy of rejecting all

envelopes with art on them is content-neutral.

### c. Rational Connection

A regulation cannot be sustained where the "logical connection between the regulation

and the asserted goal is so remote as to render the policy arbitrary or irrational."  Turner. 482

U.S. at 89-90.  Defendants may demonstrate a rational relationship by showing "an intuitive,

common[-]sense connection between the state's policy and its objectives."  Frost, 197 F.3d at

356.

Defendants assert that pursuant to the mail rules, only names, applicable state

identification ("SID") numbers, and addresses of senders and intended recipients may be placed

on the outside of envelopes.  Defendants contend that the mail rules allow ODOC to quickly

process a huge volume of incoming mail and to "protect[] institutional security, safety, health,

order, discipline, and inmate rehabilitation."  Mem. in Supp. of Mot. for Summ. J., p. 4.  They

also assert that pictures on the outside of envelopes could alert inmate recipients to special

messages or trigger dangerous behavior.  The evidence proffered by Defendants fails to show an

intuitive, common-sense connection between Defendants' mail policy and enhancing security and promoting efficiency.

With respect to security, the evidence presented by Defendants actually undermines their position. Defendants proffer evidence showing that pursuant to OAR 291-131-0025(11)(b), "hand-made drawings" may be allowed if they are "enclosed in the envelope." Dodson Decl., Attach. 1, p. 7. Indeed, Defendants concede that Plaintiff could have simply put "the same drawing that he placed on the outside of the envelope within the contents of [his] mailing." Reply, p. 4. In addition, at oral argument on October 31, 2013, Defendants admitted that incoming mail is never handled by inmates, but rather only by "Office Specialist 2s" and ODOC staff. Defendants also admitted at oral argument that incoming postcards are allowed under their mail rules even if they have drawings or pictures on them, and that envelopes that contain hand-made drawings may be permissible. Under Defendants' own evidence, it is therefore possible that a drawing placed on the outside of an envelope could be rejected, but on the other hand be permissible simply because it is placed within the envelope or on a postcard. Such an outcome demonstrates that Defendants' mail policy is arbitrary and irrational. Whether a sender places a drawing on an envelope, within an envelope, or on an alternative mailing medium, such as a postcard, should have no bearing on the security of Defendants' facility because it involves the same picture. Notably, Defendants' position that rejecting envelopes with drawings on them helps to address security concerns is further undermined by the fact that only "Office Specialist 2s" and ODOC staff handle incoming mail, not inmates. In short, Defendants fail to establish an intuitive, common-sense connection between its mail policy and promoting security.

Defendants also fail to establish an intuitive, common-sense connection between its mail policy and promoting efficiency. Contrary to Defendants assertion, OAR 291-131-0025(1) does

18 - OPINION & ORDER

not expressly preclude pictures on the outside of envelopes.  OAR 291-131-0025(1) simply requires incoming mail to include the "sender's name and return address" and requires mailings to "be addressed to the inmate using only his/her committed name and SID number".  The regulation on which Defendants rely does not explicitly preclude drawings on the outside of envelopes.

Additionally, Defendants' argument that rejecting all envelopes with drawings on them saves them time misses the mark.  Time saved from rejecting mailings and reducing the number of letters Defendants need to deliver must be based on a proper policy—not an arbitrary or irrational policy as the one here.  I recognize that relying on an arbitrary and irrational policy to reject all envelopes with drawings on them undoubtedly saves Defendants time by allowing them to avoid processing more mail.  Such a policy, however, may not support a logical, common-sense connection with Defendants' asserted goal of saving time.  Indeed, even if I were to assume that Defendants' mail policy was proper, Defendants still fail to demonstrate that they satisfy the first <u>Turner</u> factor.  Defendants fail to show that rejecting envelopes with pictures on them results in significant timesaving.  Viewing the evidence in the light most favorable to Plaintiff and drawing all justifiable inferences in his favor, I conclude that the first <u>Turner</u> factor weighs in Plaintiff's favor.

### 2. The Second <u>Turner</u> Factor

The second <u>Turner</u> factor examines "whether there are alternative means of exercising the right that remain open to prison inmates."  <u>Id.</u>, 482 U.S. at 89-90.  Defendants assert that Plaintiff had the alternative means of sending "mail with properly addressed envelopes" or re-sending his January 2011 letter "without the drawing on the envelope."  Mem. in Supp. of Mot. for Summ. J., p. 5.  Plaintiff responds that there is no alternative to sending envelope art and that a more

reasonable alternative would be to permit envelope art and only reject art that poses a threat to Defendants' penological interests.  When balancing the parties' positions, I conclude that this factor is neutral: Defendants' mail policy limits an important avenue of communicating art, but inmates retain alternative avenues, including sending art within the contents of the mailing itself or on alternative mailing mediums such as postcards.

### 3. The Third Turner Factor

The third Turner factor considers the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id. at 90.  Pursuant to Turner, "courts should be particularly deferential to the informed discretion of corrections officials" when accommodating a constitutional right that will have "have a significant ripple effect on fellow inmates or on prison staff." Id. (internal quotation marks and citation omitted).

Defendants assert that their mail policy prevents prohibited conduct and allows for the quicker processing of mail.  Plaintiff responds that Defendants present no evidence showing that art placed on the outside of the envelope poses a greater risk than the same art placed on the inside of the envelope and no evidence showing the effects envelope art has on staff or prisoners.

I conclude that this factor weighs in Plaintiff's favor.  Allowing envelope art is unlikely to have a "significant ripple effect" on inmates and staff.  As discussed above, ODOC inmates never handle incoming mail, and it is nonsensical that a drawing on the outside of an envelope may be rejected while at the same time be permitted if placed within the envelope or on a postcard.  In addition, as explained above, Defendants present no evidence showing that the time or money saved by unconditionally rejecting all envelope art is anything more than de minimus.  Accordingly, this factor weighs in Plaintiff's favor.

### 4. The Fourth <u>Turner</u> Factor

The fourth and final <u>Turner</u> factor considers the absence and existence of alternatives.
<u>See</u> <u>id.</u> at 91.  The "absence of ready alternatives is evidence of the reasonableness of a prison
regulation" whereas the "existence of obvious, easy alternatives may be evidence that the
regulation is not reasonable, but is an exaggerated response to prison concerns."  <u>Id.</u> (citation and
internal quotation marks omitted).  If a "claimant can point to an alternative that fully
accommodates the prisoner's rights at <u>de minimis</u> cost to valid penological interests, a court may
consider that as evidence that the regulation does not satisfy the reasonable relationship
standard."  <u>Id.</u>  The Ninth Circuit has made clear that "[t]his is not a least restrictive alternative
test: prison officials do not have to set up and then shoot down every conceivable alternative
method of accommodating the claimant's constitutional complaint."  <u>Id.</u> at 91-92 (citation and
quotation marks omitted).

Defendants contend there are no "no readily available alternatives to [requiring plainly
labeled] envelopes, other than to allow . . . improperly addressed mail."  Reply, p. 6.  Plaintiff
responds that Defendants have the reasonable alternative of only censoring art that poses a
security threat, instead of sweepingly rejecting all envelope art.

As discussed above, the mail policy on which Defendants relied when rejecting
Plaintiff's mail, namely OARS 291-131-0025(1), does not expressly preclude envelopes with
drawings on the outside.  The lack of any language in OAR 291-131-0025 explicitly precluding
envelopes with art on them belies Defendants' position that Plaintiff's January 2011 letter
violated an explicit rule.  In addition, the existence of obvious, easy alternatives of allowing
drawings to be placed within envelopes or on alternative mediums such as postcards supports the

conclusion that Defendants' mail policy is unreasonable. The fourth Turner factor weighs in Plaintiff's favor.

In sum, Defendants fail to establish that they are entitled to summary judgment with regard to Plaintiff's First Amendment claim. Defendants' motion for summary judgment as to Plaintiff's first claim is denied.

### E. Fourteenth Amendment Due Process Rights

Defendants argue the evidence does not demonstrate that Plaintiff's due process rights were violated. Plaintiff does not respond and proffers no evidence refuting Defendants' position.

I conclude that the evidence supports the conclusion that Plaintiff's Fourteenth Amendment due process rights were not violated. It is well-settled that "withhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards." Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002) (citation omitted). Constitutional due process requires that an inmate whose mail is rejected receive notice of the rejections and that any complaint be referred to a prison official other than the person who originally disapproved the correspondence. See Procunier, 416 U.S. at 417-19 (overruled on other grounds by Thornburgh, 490 U.S. at 413-14); see also Krug v. Lutz, 329 F.3d 692, 697-98 (9th Cir. 2003) (withholding delivery of inmate mail must be accompanied by the "notice to the prisoner" and "the right to appeal the exclusion of incoming publications to a prison official other than the one who made the initial exclusion decision").

The undisputed evidence before me demonstrates that Plaintiff was provided the requisite due process notice and right to appeal. Specifically, the record shows that Plaintiff received notice by OSP that his mailing had been rejected because it contained a drawing on the outside. Second Am. Compl., p. 3; Dodson Decl., ¶ 4; Id., Attach. 2, p. 1. The record further shows that

Plaintiff appealed the rejection of his letter to Premo, and that Premo responded by informing

him that his mailing violated OAR 291-131-0025(1).  Second Am. Compl., pp. 2-3; Dodson

Decl., ¶¶ 6-7; Id., Attach. 2, pp. 1-3.  The evidence also shows that Plaintiff requested an

administrative review of Premo's decision, but was informed by Dodson that his request for

review had been denied.  Second Am. Compl., p. 3; Dodson Decl., ¶ 8-10; Id., Attach. 2, pp. 4, 6.

The evidence establishes that Plaintiff was provided the minimal procedural safeguards.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's due process claim is

granted.

### F. Retaliation

Plaintiff alleges that the rejection of his letter was in retaliation for filing civil actions

against ODOC and NMCD.  Second Am. Compl., pp. 5-6.  "A prisoner suing prison officials

under section 1983 for retaliation must allege that he was retaliated against for exercising his

constitutional rights and that the retaliatory action does not advance legitimate penological goals,

such as preserving institutional order and discipline."  Barnett v. Centoni, 31 F.3d 813, 816 (9th

Cir. 1994) (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)).  "Of fundamental import

to prisoners are their First Amendment right[s] to file prison grievances and to pursue civil rights

litigation in the courts."  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir.2005) (citations and

quotation marks omitted).  "Within the prison context, a viable claim of First Amendment

retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action

against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

advance a legitimate correctional goal."  Id. at 567-568 (citations omitted).

Here, Plaintiff presents no evidence supporting his claim that Defendants retaliated against him by rejecting his January 2011 letter because of the alleged lawsuits he has pending against ODOC and NMCD.  Plaintiff proffers no evidence showing that he has any pending or previous lawsuits against ODOC or NMCD.  In addition, Plaintiff presents no evidence showing that any of the named Defendants knew that he had any lawsuits against ODOC or NMCD. Plaintiff's bare allegations, by themselves, are insufficient to create a triable issue of fact supporting his retaliation claim.  Defendants' motion for summary judgment as to Plaintiff's retaliation claim is granted.

**G. Mootness**

Defendants raise for the first time in their reply that Plaintiff's claims for injunctive relief impacting "only the rights of ODOC inmates are moot".  Reply, p. 9.  Defendants argue that because Plaintiff was transferred to FDOC, any change in policy or practice regarding ODOC's rules as applied to ODOC inmates sending mail and receiving mail would have no effect on Plaintiff and are therefore moot.  I disagree with Defendants.

Defendants' argument is improper because it was raised for the first time in their reply brief.  See Graves v. Arpaio, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").  Even if I were to consider Defendants' argument, however, it would still fail.  "A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 170 (2000) (citation omitted). The "party alleging mootness bears a heavy burden in seeking dismissal." Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency, 581 F.3d 1169, 1173 (9th Cir. 2009) (internal quotation marks and citation omitted).  The simple fact that Plaintiff is currently being housed at

FDOC does not moot his allegations that Defendants' application of OAR 291-131-0025 violated his constitutional rights. Additionally, it is clear that Defendants intend to continue their policy of rejecting envelopes with pictures on them, which would necessarily include any envelopes Plaintiff sends to ODOC with drawings on them. Defendants fail to meet their heavy burden of demonstrating that the allegedly wrongful conduct could not reasonably be expected to recur. Plaintiff's claims are not moot.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (dkt. #48) is GRANTED in part and DENIED in part, Defendants' motion for stay of discovery (dkt. #55) is DENIED, Plaintiff's Motion to Dismiss Defendant Williams and Substitute Defendant Colette Peters (dkt. #90) is GRANTED, Plaintiff's Motion for Settlement Hearing (dkt. #91) is DENIED, and Plaintiff's Motion for Supplemental Complaint Pursuant to Rule 15(d) (dkt. #92) is DENIED.

IT IS SO ORDERED.

Dated this ____ day of _____, 2013.

_____
MARCO A. HERNANDEZ
United States District Judge